### THE EAGLE.

### THE CLEVELAND.

### BURNS BROS. et al. v. THE CLEVELAND et al.

### No. 16847.

District Court, E. D. New York.

Dec. 23, 1943.

Alexander & Ash, of New York City (Joseph M. Meehan and Harold S. Daynard, both of New York City, of counsel), for libellants.

Burlingham, Veeder, Clark & Hupper, of New York City (Frederic Conger, of New York City, of counsel), for claimant.

GALSTON, District Judge.

The barge Eagle, as she lay light at Jersey City, was taken in tow by the tug Cleveland, to South Amboy, New Jersey, where she was loaded with 402 tons of soft coal. From South Amboy the barge was towed to Pier 17, Communipaw, New Jersey, and lay there about a week. On the afternoon of November 27, 1942 she was again taken in tow by the Cleveland, made fast on her starboard side to the port side of the tug, and was to be towed to Gowanus Canal. Shortly after they left Pier 17, the bargee, following his customary practice, worked his pump a short time and then went to his cabin. However, about twenty minutes later, on coming out on deck, the tow then being in the vicinity of Erie Basin, off Columbia Street, he observed swells coming over his bow, port side and stern. He at once ascertained the swells had put his gasoline pump out of commission. When the bargee complained to the captain of the tug that his barge was sinking, the reply was: "I will get you into Gowanus some way." On arriving in the vicinity of Bushey's dock at Gowanus the line to the dock shortly parted. The tug attempted to syphon the barge but it was too late to prevent submergence. The barge sank stern first at about 5:45 p. m.

The claimant sought to ascribe the sinking to the unseaworthy condition of the

938

barge, but the proof does not sustain the contention. On the contrary, from the evidence in the case covering the work done by the Eagle and the inspections made, and the need for but occasional pumping as described by her captain, it seems fair to conclude the boat was in seaworthy condition. Repairs had been made to the vessel in April, 1939, and again in November, 1940, and it was found to be sound and ship-shape but a few days before on inspection by the marine superintendent of the libellant. There was little pumping to do during the week prior to November 27th. After the vessel was raised her pump boxes were found in good condition. She had been engaged in continuous service during the two year period prior to the sinking, with no evidence of unseaworthiness.

So that on the whole the fault must be attributed solely to the negligence of the tug. The tug's captain was chargeable with knowledge of the storm warnings, whether he knew of them or not, Nicholson v. Erie R. Co., 2 Cir., 255 F. 54. But even assuming that the captain was justified in initiating the towage, in the light of weather conditions prevailing, the tow should not have been taken around the breakwater on the Brooklyn shore. Prudent navigation would seem to indicate that it should have proceeded down Erie Basin. The libellant may have a decree. Findings of fact and conclusions of law will be filed concurrently with this opinion.